[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Five motions filed by the parties were heard by the Court on July 11 and 14, 1994, with final argument on July 15, 1994. Plaintiff's motions are as follows: Motion for Modification dated May 25, 1993; Motion to Reconsider dated May 27, 1994. Defendant's motions are as follows: Motion for Order dated March 5, 1993; Motion to Modify dated October 19, 1993; Motion to Modify dated April 12, 1994.
These are all post-judgment motions, the marriage having been dissolved on June 13, 1991. The issues on which the Court heard evidence raised by Plaintiff's motions involve modification of the amount of alimony Plaintiff is ordered to pay Defendant as set forth in the June 13, 1991 Judgment, as well as a request to reconsider and vacate an order regarding a finding of contempt for failure to report a bonus received by Plaintiff. The issues raised by Defendant's motions involve an upward modification of the amount of alimony paid by Plaintiff to Defendant, a request that an order entered as to any future bonuses above Plaintiff's base compensation of $225,000 be shared with Defendant, compensation for certain personal property in the Pinnacle Mountain Road residence which Defendant claims Plaintiff wrongfully retained, a request CT Page 9637 that Plaintiff change the beneficiary to the Defendant's name on certain life insurance policies in order to provide her more fully with coverage of any outstanding alimony in case of Plaintiff's death, and, finally, a request that Plaintiff continue providing health insurance for the Defendant until the termination of his obligation to pay alimony or, in the alternative, to pay for a new policy which would include coverage on a pre-existing condition.
The Court after hearing testimony from both parties finds the following facts:
At the time of the dissolution in June 1991, assets of $1,524,920 were divided on a 40%/60% basis, 40%, or $609,968, going to Plaintiff husband and 60%, or $914,952, to Defendant wife.
On or about December 1991, about six months after the dissolution, Defendant purchased a home in Kingwood, Texas for $311,400 with assets she received from the dissolution. She immediately put in a swimming pool and did some shutter work on the residence, paying $18,000 and $7,000 respectively. The mortgage on the property was in the amount of $150,000. Some time later she purchased another home in Kingwood, Texas for $125,000 for her son, and later contributed $57,000 toward the purchase of a home in Canton, Connecticut for another son.
Although Defendant testified that a Peter Mantell, an executive with Exxon Company USA, has lived with her at 1511 Chestnut Grove Lane, Kingwood, Texas, since July 1993, and only "spent some time there earlier", Mr. Mantell himself indicated at his January 4, 1994 deposition that he moved in on a full time basis in September of 1992 (see Plaintiff's Exhibit C, p. 5). Further, Defendant testified that since September 1992 Mr. Mantell has been giving her $2,000 per month.
In February of 1992 Mr. Mantell loaned Defendant $40,000, interest free, which was repaid about three months thereafter. Some time before September 1992 but after repayment of the $40,000 loan to Mr. Mantell, Defendant purchased certain items of furniture for the Chestnut Grove home for Mr. Mantell. The furniture cost approximately $40,000. When Mr. Mantell began paying Defendant $2,000 CT Page 9638 per month, she stated that they mutually agreed that one-half of the payment each month would be credited toward repayment of the $40,000 furniture cost. She further testified that the other half was to be used for payment of Mr. Mantell's expenses. This agreement was not reduced to writing. Even if the Court were to believe such representations by the Defendant and Mr. Mantell (Plaintiff's Exhibit C), as of the date of the hearing approximately $17,000 of such debt was remaining and Mr. Mantell was paying $1,000 per month toward the reduction of that debt. These facts are in no way reflected on the financial affidavit of Defendant dated July 11, 1994. Defendant testified that the remaining $1,000 per month she uses to pay Mr. Mantell's laundry, gas bills, and cleaning bills and any other personal expenses he incurs. It is difficult for this Court to find the facts as stated by Defendant. Both parties have used and enjoyed the furniture purchased for the home since September 1992. Assuming its value in September 1992, was $40,000, Mr. Mantell as of the date of the hearing at a rate of $1,000 per month has paid the Defendant $23,000, more than half the cost of purchase of the furniture, an amount which very likely exceeds, or at least equals, the present value of the furniture. Further, he has lived in the home on a full time basis since September 1992 and has paid the Defendant each month from that date to the date of hearing $2,000. The Court finds that this living arrangement has caused a change in circumstances of the Defendant as to alter her financial needs.
Defendant testified that on February 1, 1994 she had an operation to fuse her ankle joint. This is a result of a condition which occurred prior to marriage but has worsened in recent years. Traumatic arthritis has set in and has interfered with Defendant's ability to walk, run or wear high heels. She has not been able to play tennis in three years. Defendant knew at the time of the divorce that surgery was going to be required. Of the five years prior to the divorce Defendant worked for two and a half of those years as an adjunct professor of managerial communication in a local college. Since her move to Texas she has sent out only two applications, one to Rice University and the other to North Harris Community College. She has not worked since her move to Texas. By her own testimony Defendant stated that she would be able to CT Page 9639 perform a job similar to that which she performed in the State of Connecticut. If she were to obtain employment, she would very likely be able to acquire health insurance through her employer.
Moreover, since Plaintiff did provide Defendant with insurance for a three-year period in compliance with #6 of the June 13, 1991 Judgment, based on the aforementioned facts and Defendant's current financial condition, the Court denies Defendant's request to continue such payments.
With respect to the issue of life insurance coverage, paragraph 9 of the judgment requires Plaintiff to maintain life insurance payable to the Defendant of no less than $350,000. In addition, paragraph 9 provides that Defendant shall have a claim against Plaintiff's estate for the value of any remaining, unpaid alimony due her. Plaintiff testified that he has had triple bypass surgery in March of 1986 and, although he did have an opportunity in May of 1994 to purchase an additional $100,000 of life insurance without a physical exam, he pays $200 per month toward that policy. Plaintiff believes the beneficiaries as to that policy are his current wife, Sharon Andrien, and his children. It appears that Defendant is fully protected by the terms of the Judgment should Plaintiff, die before the term of the alimony expires. Therefore, the Court will not order Plaintiff to provide additional life insurance for the benefit of Defendant at this time.
Both parties testified as to the specifics regarding certain items of furniture which defendant claims were hers at the time of dissolution and that the Plaintiff misappropriated. After hearing all of the testimony regarding this issue the Court finds that the Plaintiff did nothing to thwart any orders of this Court and is not liable to the Defendant for money damages on this issue.
Although the Court had previously made a finding of contempt on May 3, 1994 and ordered Plaintiff to pay Defendant $400 as a result of that order, it appears that Defendant's own exhibits numbered 12 and 13 indicate that Plaintiff did in fact inform the Defendant within the time is period as ordered by Judge Norko of a bonus that he had received for 1992. This evidence was heard in the context of Plaintiff's motion to reargue that issue. CT Page 9640
After considering all of the proffered evidence in this case, including the numerous exhibits, the Court makes the following orders:
#170 — Defendant's Motion for Order is denied.
 #171 — Plaintiff's Motion for Modification is granted. Effective July 15, 1994 Plaintiff is to pay Defendant $4,000 per month, payable by the 5th day of each month.
#178 — Defendant's Motion to Modify is denied.
#187 — Defendant's Motion to Modify is denied.
 #190 — Plaintiff's Motion to Reargue is granted. The Court's finding of contempt of May 3, 1994, is vacated.
Further, since there have been numerous post judgment motions filed by the Defendant since June 13, 1991, many of which have questionable legal sufficiency and appear to have been filed merely to harass the Plaintiff, all further motions filed by the Defendant shall first be reviewed by the Court prior to being set for hearing. If the Court finds said motions to be duplicative of issues in prior motions or frivolous, the motions shall be summarily dismissed.
Thelma Santos, J.